IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL ANTHONY DAILEY,

        Plaintiff,

vs.                                              No. CIV 08-538 MCA/LFG

ROBERT ULIBARRI, GILBERT GARCIA,
ELMER BUSTOS, JAMES THOMAS,
LEROY W. THOMPSON, and JONI BROWN,

        Defendants.

## ORDER DENYING PLAINTIFF'S EMERGENCY MOTION FOR ORDER TO STOP CORRECTIONS EMPLOYEES INTERFERING WITH PLAINTIFF'S MAIL

THIS MATTER comes before the Court on Plaintiff's "Emergency Motion to Order the Department of Corrections Employees to Stop Intervening with Plaintiff's Mail Pertaining to this Case" [Doc. 35], filed September 2, 2009, and his Amended Emergency Motion [Doc. 36], filed September 3, 2009.[1] Defendants filed a Response [Doc. 38] to both motions on September 4, 2009. For the reasons given below, the motions are denied.

Plaintiff Michael Anthony Dailey ("Dailey") filed a 42 U.S.C. § 1983 Complaint against multiple Defendants, alleging various civil rights violations while he was incarcerated. Dailey was released for a time during the course of this litigation and resided at a street address in Albuquerque, New Mexico. He was later re-incarcerated and currently resides at the Central New Mexico Correctional Facility ("CNMCF").

Dailey is proceeding *pro se*, although he states he is attempting to hire counsel to represent him in this matter. In his Emergency Motion he says that he was in involuntary Level VI lockdown 23 hours a day from June 2003 to June 2008. He was released, violated his probation and was re-

---

[1]The two motions are essentially the same, with some minor changes to the details of Plaintiff's history of incarceration, and the elimination from the Amended Motion of mention of law library access. The two motions will be referred to herein as the "Emergency Motion."

incarcerated in July 2008. He is scheduled to be released by June 2010.

Dailey says he relies on his family to send and receive his legal mail. He alleges further that that CNMCF officials are "intervening" with his legal mail, apparently intercepting and opening mail sent to him by his mother containing pleadings she had typed for him. He asks that the Court order CNMCF to stop interfering with his legal mail pertaining to this case.

The information included in, and attached to, Dailey's Emergency Motion indicates that prison officials do not consider mail sent by family members to constitute "legal mail."

"In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003), *citing* Thornburgh v. Abbott, 490 U.S. 401, 413 (1989). Thus, incoming non-legal mail is accorded the least protection. While a prisoner has the right to be present when his legal mail is opened, Wolff v. McDonnell, 418 U.S. 539, 574-77 (1974), the Constitution does not require similar treatment for incoming non-legal mail.

The Court finds that a prison rule which treats incoming mail from an inmate's family member as "non-legal" mail, regardless of how it is labeled, is a restriction reasonably related to legitimate penological interests, the test articulated in Turner v. Safley, 482 U.S. 78, 89-91 (1987).

Thornburgh v. Abbott was decided shortly after Turner. In that case, the Supreme court noted:

> [W]e have been sensitive to the delicate balance that prison administrators must strike between the order and security of the internal prison environment and the legitimate demands of those on the "outside" who seek to enter that environment, in person or through the written word. Many categories of noninmates seek access to prisons [*e.g.*, lawyers, journalists and family and friends of inmates] . . . . All these claims to prison access undoubtedly are legitimate; yet prison officials may well conclude that certain proposed interactions, though seemingly innocuous to laymen, have potentially significant implications for the order and security of the prison. Acknowledging the expertise of these officials and that the judiciary is "ill equipped" to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators who, in the

>           interest of security, regulate the relations between prisoners and the
>           outside world.

Thornburgh v. Abbott, at, 407-08 (1989).

The following factors, set forth in Turner v. Safley, at 90-91, are applicable to the Court's determination as to whether a prison rule is "reasonably related to legitimate penological interests":

First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. The connection cannot be so remote as to render the regulation arbitrary or irrational, and the legitimate governmental objective must be "neutral." Jones v. Salt Lake County, 503 F.3d 1147, 1153 (10th Cir. 2007). "[W]here prison officials draw distinctions between publications solely on the basis of their potential implications for prison security, the regulations are 'neutral.'" Id. (internal punctuation omitted).

A second factor is whether alternative means of exercising the right are available to prison inmates: "Where other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation." Turner v. Safley, at 90 (internal citation and punctuation omitted). The alternatives need not be ideal; they need only be available. Jones v. Salt Lake County, at 1153.

A third consideration is the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally.

Finally, a prison rule will not satisfy the "reasonable relationship" standard if the inmate can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests.

A rule that incoming mail from a family member is not considered "legal mail," even if it is labeled as legal mail, is reasonably related to the valid corrections goal of ensuring that dangerous materials are not sent into prisons. Official legal mail carries greater privacy safeguards than does mail from an inmate's family and friends. It is apparent in this case that Dailey's mother is not labeling her correspondence as "legal mail" in a ruse to cover up attempts to import contraband,

weapons, coded messages from gang members or other material that might raise security concerns. Rather, Dailey has demonstrated that the mail from his mother contained legal pleadings. Nevertheless, a reasonable prison regulation that permits non-legal mail to be opened and inspected outside of an inmate's presence is validly meant to ensure against practices such as sending in contraband, and a rule that requires that "legal mail" be limited to correspondence sent from an attorney or a court, and excludes from that category mail sent by family members, promotes a legitimate security interest at the prison.

In addition, Dailey has alternative means to exercise his right to send and receive legal mail. Indeed, the method Dailey has chosen to correspond with the Court is not in keeping with this District's Local Rules. While there is nothing wrong with having a family member type up his filings, Dailey must still sign his own pleadings. D.N.M.LR-Civ. 10.3(b) provides that any paper filed in Court without a signature "will be stricken unless it is signed within fourteen (14) calendar days after the omission is called to the party's attention." Rule 11(a), FED. R. CIV. P., similarly provides that every pleading and motion must be signed by an attorney of record "or by a party *personally* if the party is unrepresented" (italics added). Rule 11 further requires the Court to "strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention."

The signature line of Dailey's pleadings contains only the notation "/s/." While the Court "will treat a duplicate signature as an original signature," D.N.M.LR-Civ. 11.1, the "/s/" method used in Dailey's recent pleadings does not constitute a duplicate signature in this context. In addition, Dailey's signature line lists a street address on Burma Drive, NE, in Albuquerque, New Mexico, which was Dailey's official address for purposes of this case prior to the probation violation which led to his re-incarceration. This practice of listing a private street address on pleadings, when Dailey is actually incarcerated, has caused some confusion in the Clerk's office of this Court. Dailey is advised that he must give his actual address – at present, at CNMCF – on all of his pleadings and must keep the Court advised as to any changes in the actual address. D.N.M.LR-Civ.

83.6. Listing the address of a family member does not fulfill his obligation under the Local Rules.

If Dailey wishes to continue to permit family members to type his pleadings, the pleadings must first be delivered to him for his review and signature. If the prison facility where he is incarcerated does not permit incoming mail from family members to be labeled or considered "legal mail," that is a reasonable restriction. Mail coming in from Dailey's mother should not be so labeled, and the facility acted appropriately in ignoring that label. Once he has signed the documents, Dailey may mail them back to his mother as non-legal mail or, if he wants them to be treated as legal mail, he may mail them directly to the Court as nearly all other inmates do. Thus, he has available alternatives and is not being denied his access to the courts. The fact that "the alternative is not the 'best method' from the inmate's point of view," is not the relevant inquiry. Wardell v. Duncan, 470 F.3d 954, 961-62 (10th Cir. 2006).

As to the third Turner factor, the Court reiterates that although there is no indication that Dailey or his family members are attempting to hide unwarranted activity under the guise of "legal mail," Dailey is asking the Court to order the prison to provide unique treatment to his incoming mail, treatment not applicable to other inmates. The prison is not obligated to provide special treatment to Dailey simply because he has chosen to communicate with the Court by using the services of family members, however trustworthy he feels the family members may be. Other inmates' families and friends may not be so trustworthy, and the prison has a legitimate interest in applying its reasonable regulations to all inmates, rather than using its resources to single out one inmate for special privileges.

Finally, Dailey has not pointed to any alternative method by which the prison can accommodate his preferences without causing an undue burden on its valid penological interests, including its interest in applying prison rules even-handedly to the end that the safety and security of all inmates and employees are protected.

"[T]he burden is not on the state to prove the validity of a prison regulation, but rather on the prisoner to disprove it." Jones v. Salt Lake County, at 1159. In addtion, this Court is not a

complaint bureau; rather, it sits in this case to determine whether Dailey's constitutional rights were violated.  The Court finds that Dailey has failed to demonstrate that his constitutional rights were violated with respect to the handling of his prison mail.

Dailey is advised that he must follow the Federal Rules of Civil Procedure, as well as this Court's Local Rules, with respect to all pleadings and papers filed in this matter.  "Although we construe [Plaintiff's] pleadings liberally because he is a pro se litigant, he nevertheless must follow the same rules of procedure that govern other litigants."  Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992).

Defendants state in their Response that they have mailed to Plaintiff a copy of Plaintiff's response to the Martinez report, and that counsel for Defendants has directed staff at CNMCF to deliver this specific item of legal mail to Plaintiff, as it was mailed from an attorney.  This procedure does not affect anything ordered by the Court herein.

Defendants also state that, "on the assumption that this Court will direct Defendants to override policy and deliver unto the Plaintiff his legal mail, counsel for Defendants has directed staff at the Central New Corrections Facility (CNMCF), where Plaintiff is currently incarcerated, to so deliver said mail." [Doc. 38, at 2].  The Court does not direct Defendants to override policy, and to the extent counsel has directed CNMCF staff to treat mail from Plaintiff's mother as "legal mail," this Order takes precedence over counsel's direction to staff.

### Order

IT IS THEREFORE ORDERED that Plaintiff's Emergency Motion and Amended Emergency Motion [Docs. 35 and 36] are denied.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge